**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

────────────────────────────────

HEIDI DAVIS,

                                    Plaintiff,

        v.

                                                No. 1:20-CV-733
FARZAD SANI, DDS, P.C., et al.,                 (GTS/CFH)

                                    Defendants.

────────────────────────────────


**APPEARANCES:**                    **Of Counsel:**

Solomon Law Firm PLLC               KATHRYN LYNNE BARCROFT, ESQ.
300 Great Oaks Blvd.
Suite 312
Albany, New York 12203
Attorneys for Plaintiff

Hodgson, Russ Law Firm              GLEN P. DOHERTY, ESQ.
677 Broadway
Suite 301
Albany, New York 12207
Attorney for Defendants

Tabner, Ryan Law Firm               THOMAS R. FALLATI, ESQ.
18 Corporate Woods Blvd.            WILLIAM RYAN, JR., ESQ.
Albany, New York 12211-2605
Attorneys for Defendants

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

───────────────────

[1] In this circuit, motions to compel arbitration are treated as dispositive motions which may be referred to a magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  See DuBois v. Macy's East Inc., No. 06-CV-6522 (NGG/LB), 2007 WL 4224781 (E.D.N.Y. Nov. 27, 2007), aff'd, 338 F. App'x 32 (2d Cir. 2009) (summary order); Rescuecom Corp. v. Chumley, 522 F. Supp. 2d 429 (N.D.N.Y.2007); Najib v. Arnold, No. 03-CV-3010 (CBM), 2005 WL 221429 (S.D.N.Y. Jan. 31, 2005); Lockport Mem'l Hosp. v. United Prof'l Nurses Assoc., No. 02-CV-0770A(SR) (RJA/HKS), 2004 WL 1445722, at *1 (W.D.N.Y. June 25, 2004), report and recommendation adopted, No. 02-CV-770A (RJA/HKS), 2004 WL 7344666 (W.D.N.Y. July 15, 2004); see also FED. R. CIV. P. 72(b); N.D.N.Y.L.R. 72.1.

Presently pending before the Court is defendants Farzad Sani, DDS, P.C.'s ("the Practice") and Dr. Farzad Sani's ("Dr. Sani") (collectively, where appropriate, "defendants") motion to compel arbitration and for a stay pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*.  See Dkt. No. 17.  Plaintiff opposed the motion.  See Dkt. No. 23.  Upon the Court's permission, defendants filed a reply to plaintiff's response in opposition, see Dkt. No. 28, and plaintiff filed a sur reply.  See Dkt. No. 31.    For the reasons that follow, it is recommended that defendants' motion to compel arbitration and for a stay is denied.

## I. Background

## A. Plaintiff's Amended Complaint

For purposes of this motion, the undersigned will assume the parties' familiarity with the facts and provide only a brief summation of the factual and procedural background as relevant to the present motion.[2]  Plaintiff alleges the following claims against defendants pursuant to the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq*.: (1) sex-based discrimination, including hostile work environment, demotion, and termination of employment; (2) disability discrimination, including hostile work environment, demotion, and termination of employment; (3) disability discrimination based on failure to provide reasonable accommodations; and (4) retaliation.  See Amen. Compl. 16-19, 24-28, 29-31, 32-33.  Plaintiff also alleges the following claims pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., against defendants: (1) interference, restraint and/or denial of FMLA rights; and

---

[2]  A more thorough recitation of plaintiff's factual allegations and procedural history can be found in plaintiff's Amended Complaint.  See Dkt. No. 4.

(2) retaliation.  See id. at 20-22, 22-24.  Further, plaintiff alleges a claim for intentional infliction of emotion distress against defendants pursuant to New York State tort law. See id. at 34-35.  Moreover, plaintiff alleges the following claims against Dr. Sani individually pursuant to the NYSHRL: (1) aiding and abetting sex-based discrimination; (2) aiding and abetting disability-based discrimination; (3) aiding and abetting disability discrimination by failing to provide reasonable accommodations; and (4) aiding and abetting retaliation.  See id. at 19-20, 28-29, 31-32, 33-34.

As relevant, "[p]laintiff was employed by [the Practice] for approximately twelve years, from 2005 to 2019, with a three-year break in service from 2012 to 2015."  Amen. Compl. at 3 ¶ 8.  Plaintiff alleges that, in 2012, she "approached Dr. Sani to discuss" another female employee's "concerns" regarding comments Dr. Sani allegedly made to that employee.  Id. at 6 ¶ 38.  "Dr. Sani instructed [p]laintiff to move" the other employee to a position that was "tantamount to a demotion."  Id.  "In response," plaintiff states that she "put in her two-week notice and left the [P]ractice."  Id. at ¶ 39.  "In or around 2015," plaintiff states that she "returned to work at [the Practice] on Saturdays due to her need for extra money . . . ."  Id. at 7 ¶ 44.  Plaintiff initially worked only "on Saturdays" and Dr. Sani advised [her] not to tell anyone she was working . . . ."  Id.  Sometime in 2016, plaintiff "return[ed] in a full-time capacity."  Id. at ¶ 45.  In mid-June 2019, plaintiff was required to take "what she was told was a company-wide drug test at [the Practice]."  Id. at 14 ¶ 108.  On July 2, 2019, the Practice's Director of Human Resources, Emily Fleming ("Fleming"), informed plaintiff via email that she failed her drug test by testing positive for marijuana.  See id. at 15 ¶ 119.  Fleming informed plaintiff that her employment at the Practice was terminated for violating "the 'Drug-Free Workplace'

clause in [the Practice's] company policy." Id. at ¶ 120.  Plaintiff commenced the present lawsuit on July 1, 2020.  See Dkt. No. 1.

### B. Defendants' Motion

### 1. Agreement to Arbitrate

Defendants move to compel arbitration and to stay this action pursuant to the FAA.  See Dkt. No. 17.  Defendants aver that the Practice's alternative dispute resolution agreement ("ADR Agreement") "plainly constitutes an agreement that binds [p]laintiff here[.]"  Id. at 5.  In support of their motion, defendants proffered an unsigned and undated ADR Agreement for Pediatric Dentistry of New York and Pediatric Dental Group of New York.  See Dkt. No. 17-3 at 2.  Defendants also proffered a separate document tilted "Acknowledgement and Acceptance of Alternative Dispute Resolution Policy by Independent Business Associate Of" signed by plaintiff[3] on September 10, 2007.  Dkt. No. 17-4 at 2 (capitalization omitted).  The acknowledgement form stated, in relevant part, that it referred to the alternative dispute resolution policy of Pediatric Dentistry of Glens Falls.  See id.  Defendants posit that "Plaintiff signed [the] acknowledgement expressly stating her agreement to be bound by the ADR Agreement in 2007, when she was first hired by the Practice[,]" and contend that "the ADR Agreement remained in effect throughout the period of [p]laintiff's employment, including when she was re-hired by the Practice in 2015."  Dkt. No. 17 at 5.

In relevant part, the ADR Agreement defendants proffer states,

> Pediatric Dental Group of New York has adopted the
> *Alternative Dispute Resolution Policy* as a management
> policy and as a condition of employment for all new

---

[3]  Plaintiff signed this document as "Heidi Bessette," which appears to be her maiden name.

> employees, as of the effective date of this document.
> Moreover, all existing employees who continue employment
> with Pediatric Dental Group of New York beyond 30 days
> after the effective date of this document also will be deemed
> to have accepted this Policy as the sole and exclusive
> method for attempting to resolve workplace disputes and
> issues of legal rights prior to seeking legal redress.

Dkt. No. 17-3 at 2. Thus, defendants posit, the ADR Agreement is binding on plaintiff

not only by virtue of plaintiff signing it, but as a matter of law, based on plaintiff's

continued employment and because "the ADR was a condition of [her] employment,

including upon her re-hiring by the Practice." Dkt. No. 17-1 at 11. In support of this

proposition, defendants cite several cases in which the Southern District of New York,

applying New York State caselaw, concluded that, continued employment is sufficient to

manifest assent to a binding arbitration agreement and that continuing to work following

the receipt of notice that an employer's arbitration policy was a condition of employment

established assent to an arbitration irrespective of an employee signing such policy.

See id. (citations omitted).

        In further support of their motion, defendants proffer Fleming's declaration. See

Dkt. No. 17-2. Fleming explains that she has been employed as the Practice's Director

of Human Resources since January 2019. See id. at 1 ¶ 1. Fleming states that, in

2007, the Practice "created an [ADR] Policy," which "all existing employees were

required to agree to . . ., and thereafter, all new hires were required to agree to . . . as

part of [the Practice's] onboarding policy." Id. at 2 ¶ 5. Fleming notes that plaintiff

signed the ADR Agreement on September 10, 2007. See id. at ¶ 6. Further, Fleming

notes that, under the language of the ADR Agreement, "the Policy must be agreed to by

all employees as a condition of employment" and also mandates that all employees who

continued employment at the Practice beyond 30 days after the Policy's effective date are deemed to have accepted the policy.  Id. at ¶ 7.

### C. Plaintiff's Response in Opposition

### 1. Agreement to Arbitrate

In opposition to defendants' motion, plaintiff first argues that defendants have failed to meet their burden of establishing that a valid agreement to arbitrate exists as between plaintiff and the Practice.  See Dkt. No. 23 at 14.  Plaintiff points out that the unsigned and undated policy that defendants proffer references different legal entities than the acknowledgement form plaintiff signed on September 10, 2007.  See id. at 15.  In particular, plaintiff notes that Pediatric Dental Group of New York, one of the entities referenced in the unsigned and undated policy, is "a doing business name which was not even used until 2016, whilst the 2007 [u]nattached [s]ignature [p]age refers to" Pediatric Dental Group of Glens Falls, "the entity's previous name[.]"  Id.  Further, plaintiff points out that Fleming was not employed by the Practice until 2019, and argues that she "cannot knowingly testify to what [p]laintiff signed or what was presented to [p]laintiff in 2007[.]"  Id.  Plaintiff argues that "Fleming has no firsthand knowledge regarding what was . . . presented to [p]laintiff in 2007, or at any time prior to 2019."  Id. at 16.  Plaintiff also disputed defendants' position that her acknowledgement form referenced an ADR policy that was the same or similar to the unsigned and undated ADR Agreement that defendants proffer.  See id. at 15.  In addition, plaintiff averred that defendants failed to proffer the ADR policy corresponding to her 2007 signed acknowledgement form.  See id. at 16.

In support of her opposition, plaintiff proffers the declaration of Lyndsay Meilleur-Patel ("Meilleur-Patel"), the Practice's former Director of Human Resources between January 2015 and December 2018.  See Dkt. No. 23-2 at 1 ¶¶ 1, 2.  Meilleur-Patel states that she "became familiar with plaintiff in 2016, when [plaintiff] returned to being a full-time employee at the [P]ractice."  Id.  Meilleur-Patel explains that, "in or about 2016," "[t]he name of the [P]ractice changed from Pediatric Dentistry of Glens Falls to Pediatric Dental Group of New York[.]"  Id. at ¶ 3.  In her role as Director of Human Resources, Meilleur-Patel was "responsible for onboarding and orienting new employees."  Id. at 2 ¶ 6.  Meilleur-Patel states that part of the onboarding and/or orienting "process was providing [new employees] with the necessary paperwork[,]" including the "[ADR policy which [she] asked new employees to sign."  Id. at ¶ 7.

Meilleur-Patel further states that, based on her review of the unsigned and undated ADR Agreement proffered by defendants, she "believe[s that] it is likely not identical to the document which [she] provided to new employee."  Dkt. No. 23-2 at 2 ¶ 8.  Meilleur-Patel noted that she believed several differences existed between the ADR policy she distributed during her tenure with the Practice and the ADR agreement proffered by defendants.  See id. at ¶ 8.  For instance, she did not recall the ADR she distributed stating that the ADR was a condition of employment or would become effective upon an employee continuing employment after 30 days.  See id.  In addition, Meilleur-Patel indicated that, because plaintiff began working on Saturdays only before becoming a full-time employee in 2016, she "did not recall completing an onboarding or orientation for [plaintiff]" and did "not recall presenting the [ADR] policy to [plaintiff] and d[id] not know if anyone else did at any point."  Id. at 3 ¶¶ 13, 14.

### D. Defendants' Reply to Plaintiff's Response

### 1. Agreement to Arbitrate

In reply to plaintiff's response, defendants reassert their position that the Practice's 2007 ADR policy—which plaintiff signed—binds plaintiff to arbitration.  See Dkt. No. 28 at 2.  Defendants aver that plaintiff's arguments concerning the unsigned and undated ADR policy are "moot" because Fleming clarified the record by producing, what she identified as the ADR policy in effect in 2007.  Id.  Defendants proffer Fleming's declaration in support of their reply in which she states that, upon assuming her position as the Practice's Director of Human Resources, she "learned about [the Practice's] policies and procedures, including its practices with regard to the [ADR] Policy, through discussions with Dr. Sani and . . staff . . . [and through a review of the Practice's] electronic and paper files."  Dkt. No. 28-1 at 2 ¶ 3.  Fleming sates that she "consulted with Dr. Sani and reviewed electronic copies of the [ADR] Policy going back to 2007, as well as electronic copies of signed acknowledgements" and that "[t]hrough that review, [she] located a copy of [p]laintiff's" 2007 acknowledgement.  Id. at ¶ 4.  Fleming also states that, "[u]pon further review, [she] realized that the copy of the [ADR] policy . . . attached to [her] moving declaration [wa]s an electronic version incorporating more recent edits that [she] inputted."  Id. at ¶ 5.  However, Fleming states that she also "located the copy of the [ADR] Policy as it existed at the time of . . . [p]laintiff's signature of the Acknowledgement on or about September 10, 2007 . . . ."  Id.  Attached as Exhibit A to Fleming's reply declaration is "a copy of the 2007 [ADR] Policy."  Id.  This document is titled "Workplace Protection Package-Part I *Alternative Dispute Resolution Policy.*'"  Dkt. No. 28-2 at 2.  The document is dated July 10, 2007.  See id. at 19.

8

Fleming states that "[t]he electronic Word file containing the 2007 [ADR] Policy reflects 'last edited' date of August 3, 2007, evidencing that this was the version in place at the time that [p]laintiff signed the Acknowledgement."  Dkt. No. 28-1 at 2 ¶ 5.  In addition, Fleming notes that, despite the different legal entities referred to in the previously submitted ADR policy and plaintiff's signed 2007 acknowledgement form, her "employment under both entities was no different; she worked at the same location for the same [P]ractice, always under Dr. Sani and his staff."  Id. at 2-3 ¶ 6.

In relevant part, the ADR Policy attached to Fleming's reply declaration includes, similar to the previously submitted unsigned and undated ADR policy, a provision under the subheading "Binding Policy" which states that the ADR Policy is "a condition of employment for all new employees, as of the effective date of the document" and "all existing employees who continue employment with Pediatric Dentistry of Glens Falls beyond 30 days after the effective date of this document also will be deemed to have accepted this Policy as the sole and exclusive method for attempting to resolve workplace disputes and issues of legal rights prior to seeking legal redress."  Dkt. No. 28-2 at 2-3.  Defendants argue that, "[g]iven the terms of the ADR Agreement, it remained in effect and binding upon [p]laintiff whether or not she signed a new acknowledgement upon her return to the Practice in 2015."  Dkt. No. 28 at 2.  Defendants aver that "[pl]aintiff fails to address, much less distinguish, the case law that [d]efendants cited on this point."  Id.

**E. Plaintiff's Sur Reply**

**1. Agreement to Arbitrate**

9

Plaintiff asserts that defendants have failed to establish that she signed the ADR Agreement proffered in reply and "have not provided a signed version of th[at] document[.]" Dkt. No. 31 at 2. Plaintiff argues that the "new" ADR Agreement proffered in reply is "not at all familiar to [her], nor does she recall ever seeing any document which looked similar or contained similar terms." Id. at 3. Plaintiff also states that she does not recall presenting such a document containing such terms to employees at the Practice while she was employed as the Office Manager of Pediatric Dentistry of Glens Falls, despite being "responsible for presenting documents relating to the [P]ractice's policies and terms of employment to new employees." Id. Further, plaintiff avers that Fleming's declaration is ambiguous as to whether she learned of the Practice's past policies or the length of time such policies were in effect, and that any such information is based on "hearsay," insofar as it is purportedly based on "consultations with Dr. Sani." Id. at 3, 4.

Plaintiff proffers Meilleur-Patel's declaration in support of her sur reply, in which Meilleur-Patel states that, when she assumed her position at the Practice, neither Dr. Sani or any other staff consulted her as to the Practice's past policies, including the ADR policies previously implemented or used prior to her. See Dkt. No. 31-2 at 1, 2 ¶¶ 2, 3. Plaintiff avers that Meilleur-Patel's declaration in this regard undercuts Fleming's declaration insofar as it establishes that defendants "did not provide . . . historical information" concerning the Practice's policies "to their Director of Human Resources[.]" Dkt. No. 31 at 4. Meilleur-Patel also declared that "the [P]ractice's employee personnel files contained at least some signature pages but did not contain the agreements that corresponded to the signature pages." Dkt. No. 31-2 at 2 ¶ 4.

Further, Meilleur-Patel stated that, upon her review of the ADR Agreement submitted with defendants' reply, she believed that she may have distributed that Agreement to new employees while she was the Practice's Director of Human Resources, but that she had "no way of knowing when this policy started being used by the [P]ractice (other than that it was by or before when [she] started working for the [P]ractice in January 2015)." Dkt. No. 31-2 at 2 at ¶ 7. Therefore, Meilleur-Patel states, she "cannot say whether th[at] policy was used in 2007 or implemented sometime thereafter." Id. at ¶ 8. In addition, Meilleur-Patel states that, after the Practice's name changed, she noticed that the "Workplace Protection Plan still referred to Pediatric Dentistry of Glens Falls" and that she "wanted to update the Workplace Protection Plan to reflect the new name of the Practice." Id. at ¶¶ 9, 10. Meilleur-Patel "looked for a Word version of it on the [P]ractice's computer system, and/or asked the Practice Manager for the Word version of the document." Id. at 2-3 ¶ 11. However, Meilleur-Patel states that she "never found a Word version of the Workplace Protection Plan, or any other document containing the [ADR] Policy for the [P]ractice, and was never provided with one." Id. at 3 ¶ 12. Therefore, Meilleur-Patel "scanned the Workplace Protection Plan and saved it as a .pdf so that [she] could electronically provide it to new employees." Id. at ¶ 15. She "believe[s] this was the only electronic version of the document available when [she] left the practice" and "do[es] not believe the Workplace Protection Plan existed in Word format while [she] was employed by the practice." Id. at ¶¶ 13, 15. "To [her] knowledge, the unsigned Workplace Protection Plan" submitted by defendants in support of their reply, "did not exist in any electronic format when she started with the [P]ractice." Id. at ¶ 14.

## II. Discussion

### 1. Agreement to Arbitrate

"In the context of motions to compel arbitration under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citation omitted).  The court must "consider all relevant, admissible evidence" and "draw all reasonable inferences in favor of the non-moving party."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).  "If there is any issue of fact as to the making of the agreement for arbitration, then a trial is necessary."  Bensadoun, 316 F.3d at 175 (citing 9 U.S.C. § 4).

"[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law." Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002).  Therefore, "'[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  Id. (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)); see Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co., 775 F.3d 145, 148 (2d Cir. 2014) ("Arbitration agreements are considered contracts.").  "To form a valid contract under New York law," which the parties do not dispute applies to the present action, "there must be an offer, acceptance, consideration, mutual assent and intent to be bound."  Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) (internal quotation marks and citation omitted).  "Under New York law, the party seeking arbitration must prove by a preponderance of the evidence that a valid arbitration agreement exists."  Suqin Zhu v. Hakkasan NYC LLC, 291 F. Supp. 3d 378, 387 (S.D.N.Y. 2017) (footnote and citations omitted).  "By signing a written instrument, a

12

party creates presumptive evidence of its assent to enter into a binding agreement." Id. (citations omitted). However, although New York law requires arbitration agreements to be in writing, "[t]here is no requirement that the writing be signed so long as there is other proof that the parties actually agreed on it." Crawford v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 35 N.Y.2d 291, 361 N.Y.S.2d 140, 319 N.E.2d 408, 412 (1974) (quotation marks omitted); see Lockette v. Morgan Stanley, No. 18-CV-876 (JGK), 2018 WL 4778920, at *4 (S.D.N.Y. Oct. 3, 2018) ("Mutual assent need not be signified in writing; '[t]he manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract.'" quoting Register.com, Inc., 356 F.3d at 427). Moreover, "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." Applied Energetics, Inc. v. NewOak Capital Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011).

Here, although on September 10, 2007, while plaintiff was initially employed at the Practice, she signed a document titled "Acknowledgement and Acceptance of Alternative Dispute Resolution Policy by Independent Business Associate Of" Pediatric Dentistry of Glens Falls, Dkt. No. 17-4 at 2, issues of fact exist concerning whether plaintiff and the Practice formed a valid contract that consisted of the document proffered by defendants, titled "Workplace Protection Package—Part I *'Alternative Dispute Resolution Policy*,'" and whether that policy corresponds to plaintiff's signature page. Dkt. No. 28-2 at 2.

13

First, the undersigned notes that the "Workplace Protection Package—Part I *'Alternative Dispute Resolution Policy*,'" contains an acknowledgement form that matches the acknowledgement form signed by plaintiff on September 10, 2007.  <u>See</u> Dkt. No. 17-4 at 2; Dkt. No. 28-2 at 11.  The "*Alternative Dispute Resolution Policy*" of the Workplace Protection Package—Part I, as proffered by defendant, is undated.  <u>See</u> <u>id.</u>  However, the "Workplace Protection Package—Part II," which contains the Practice's "*Confidentiality and Non-Disclosure Policy*," is dated July 10, 2007.  <u>See</u> <u>id.</u> at 19.  The "*Confidentiality and Non-Disclosure Policy*" contained in Part II of the Workplace Protection Plan contains a separate signature page from the *Alternative Dispute Resolution Policy* contained in Part I, and is governed by a two-step dispute resolution process that is separate and apart from the five-step dispute resolution process contained in the "'*Alternative Dispute Resolution Policy*."  <u>See</u> Dkt. No. 28-2 at 5-9, 16-18.

Further, although Fleming states that the "Workplace Protection Package" proffered in reply to plaintiff's opposition is the document corresponding to plaintiff's September 10, 2007 signature, <u>see</u> Dkt. No. 28-1 at 2 ¶ 5, Meilleur-Patel's declaration raises a question of fact as to whether this document is actually the ADR policy that corresponds to plaintiff's signature page.  In particular, Meilleur-Patel's declaration controverts Fleming's representations that a Word version of the Workplace Protection Plan, or any document relating to the Practice's ADR Policy, existed between 2015 and 2018, before Fleming took over as Director of Human Resources.  <u>See</u> Dkt. No. 31-2 at 2, 3 ¶¶ 9-13, 15.  Indeed, "[t]o [her] knowledge," Meilleur-Patel declares that, contrary to Fleming's representations, the "Workplace Protection Plan" submitted in reply to

14

plaintiff's opposition "did not exist in any electronic format when she started with the [P]ractice" in 2015.  Id. at 3 ¶ 14.  Meilleur-Patel explained that, after the Practice changed its name in 2016, she "noticed that the Workplace Protection Plan still referred to Pediatric Dentistry of Glens Falls" and that when she tried to "update [it] to reflect the new name of the [P]ractice[,]" she "looked for a Word version of it on the [P]ractice's computer system, and/or asked the Practice Manager for a Word version of the document."  Id. at 2-3 ¶¶ 10, 11.  However, Meilleur-Patel "never found a Word version of the Workplace Protection Plan, or any other document containing an Alternative Dispute Resolution Policy for the [P]ractice, and was never provided with one."  Id. at 3 ¶ 12.  Moreover, Meilleur-Patel stated that, although she recalled distributing the Workplace Protection Plan at Dkt. No. 28-2 during her time at the Practice, she had no way of knowing when that policy started to be used "other than it was by or before when [she] started . . . [in] January 2015."  Dkt. No. 31-1 at 2 ¶ 7 (parenthesis omitted).

To the extent that Fleming states that she learned of the policies in place at the Practice before she began her employment in 2019, based on "review of [the Practice's] electronic and paper files," Dkt. No. 28-1 at 2 ¶ 3, the Court notes that Fleming posited only that she proffered an electronic copy—not a paper copy—of a prior Word version of the Workplace Protection Plan in support of defendants' reply—which Meilleur-Patel declared did not exist in 2015.  See id. at ¶ 5.  As discussed above, Meilleur-Patel's declaration raises a question of fact as to whether a prior Word version of the Workplace Protection Plan existed prior to her or Fleming's tenure as the Practice's Director of Human Resources, which brings into question the propriety of the document submitted at Dkt. No. 28-2.  See Dkt. No. 31-2 at 2, 3 ¶¶ 9-15.  Moreover, as plaintiff

contends, Fleming was not employed by the Practice until January 2019, and may not rely on purported hearsay statements from Dr. Sani or other staff at the Practice as the basis of her knowledge of the Practice's previous policies, including which ADR policy was in place in 2007.  Indeed, the Court finds questionable that defendants, via Fleming, originally represented a subsequent (2016 or newer) version of the Practice's ADR policy as that signed by plaintiff in 2007, and only in reply to plaintiff's opposition "realized that the copy . . . attached . . . to [Fleming's] moving declaration [wa]s an electronic version incorporating more recent edits that [she] inputted."  Dkt. No. 28-1 at 2 ¶ 5.   In addition, although Fleming avers that the policy submitted at Dkt. No. 28-2 was "last updated" in August 2007, see Dkt. No. 28-1 at 2 ¶ 5, defendants have not submitted evidence in support of this statement.

Plaintiff also explained in her declaration in support of her sur reply that, during her first stint with the Practice, she worked as the Office Manager between 2009 and 2012.  Dkt. No. 31-1 at 1 ¶ 1.  In this role, plaintiff's responsibilities included "presenting documents relating to the [P]ractice's policies and terms of employment to new employees."  Id. at 2 ¶ 8.  However, plaintiff states that upon her review of the Workplace Protection Plan submitted by defendants' in reply, that document did "not look familiar to [her], nor d[id she] recall ever seeing any document which looked similar or contained similar terms" and "d[id] not recall presenting [that] . . . or any similar document, to new employees during [her] time as Officer Manager for Pediatric Dentistry of Glens Falls[.]"  Id. at ¶¶ 4, 5, 8.

As an additional matter, insofar as defendants aver that plaintiff's continued employment at the Practice after rejoining in 2015 resulted in her acceptance of the

proffered ADR policy as a matter of law, the Court again concludes that questions of fact exist precluding such a legal conclusion. <u>See</u> Dkt. No. 17-1 at 11. Meilleur-Patel— the Practice's Human Resources Director at the time plaintiff was re-hired in 2015— explained in her declaration that, because plaintiff worked only on Saturdays in 2015 before becoming a full-time employee in 2016, she "did not recall completing an onboarding or orientation for [plaintiff]" and did "not recall presenting the [ADR] policy to [plaintiff] and d[id] not know if anyone else did at any point." Dkt. No. 23-2 at at 3 ¶¶ 13, 14. Further, as noted above, Fleming did not begin her employment at the Practice until January 2019, and does not have any personal knowledge concerning whether plaintiff was afforded an onboarding or orientation process that included providing plaintiff with the ADR policy as contained in Dkt. No. 28-2 when she returned to work for the Practice in 2015—and does not represent that she or anyone else at the Practice provided plaintiff with onboarding/orientation or the ADR policy. Thus, while defendants are correct that "it is 'established law of this circuit that a party may be bound by an agreement to arbitrate even in the absence of a signature[,]'" <u>Brown v. St. Paul Travelers Companies, Inc.</u>, 331 F. App'x 68, 69–70 (2d Cir. 2009) (summary order) (quoting <u>McAllister Bros., Inc. v. A & S Transp. Co.</u>, 621 F.2d 519, 524 (2d Cir. 1980)), the record before the Court is devoid of any evidence that plaintiff received notice of an ADR policy after rejoining in 2015.

Although "acceptance need not be express, . . . where it is not, there must be evidence that the offeree knew or should have known of the terms and understood that acceptance of the benefit would be construed by the offeror as an agreement to be bound." <u>Schnabel v. Trilegiant Corp.</u>, 697 F.3d 110, 128 (2d Cir. 2012). In the present

（高）

matter, questions of fact exist as to the terms of the ADR agreement plaintiff signed in 2007, and/or whether plaintiff was issued notice of the Practice's ADR Policy as contained in Dkt. No. 17-3 and/or Dkt. No. 28-2.  In this regard, the caselaw defendants cite in support of their arguments that a valid arbitration agreement existed as between the Practice and plaintiff based on the language that agreement to the ADR policy was a condition of employment and/or that continuation of employment meant that an employee would be deemed to have accepted the policy is of no moment as the proposition for which this authority stands bypasses the relevant issue—whether plaintiff received notice of the ADR policy defendants proffer.

Defendants first cite Padro v. Citibank, N.A. (No. 14-CV-2986 (NGG/LB), 2015 WL 1802132, (E.D.N.Y. Apr. 20, 2015)), where the Eastern District held that, "even if [the p]laintiff had not" "signed documents acknowledging the Employment Arbitration Policy," "by continuing to work for [the d]efendant after receiving notice of the Employment Arbitration Policy, [the p]laintiff manifested assent to arbitration in accordance with the policy."  Padro, 2015 WL 1802132, at *5.  Defendants also cite Thomas v. Pub. Storage, Inc. (957 F.Supp.2d 496 (S.D.N.Y.2013)) and Manigault v. Macy's E ., LLC, (318 F. App'x 6 (2d Cir.2009) (summary order))—the cases cited in Padro.  See Dkt. No. 17-1 at 11.  In particular, defendants cite Thomas for the following quotation: "'New York, unlike other jurisdictions, has found that continued employment, without more, is sufficient to manifest assent to arbitration where an employee received documents that contain such information, continued with her employment, and did not opt out of arbitration.'"  Thomas, 957 F.Supp.2d at 499 n. 2 (quoting Manigault, 318 F. App'x at 8).  Moreover, defendants cite Bishop v. Smith Barney, Inc. (No. 97 CIV. 4807

(RWS), 1998 WL 50210 (S.D.N.Y. Feb. 6, 1998)), where the arbitration policy at issue stated that "[a]rbitration is not only an essential element of your employment relationship, it is a condition of your employment with us," the court held that, "[b]y its terms, and by virtue of its dissemination and inclusion in employee handbooks . . .  the . . . Arbitration Policy was incorporated into [the plaintiff's] original employment agreement with [the defendant]."  Bishop, 1998 WL 50210, at *5.

In contrast to the authority defendants cite, as discussed above, questions of fact exist as to whether plaintiff received notice of the ADR policy proffered by defendants at Dkt. Nos. 17-3 and/or 28-2, or whether the 2007 document differed from the policies contained in those documents, which precludes Court from granting defendants' motion to compel arbitration.  Further, to the extent that the Practice's 2007 ADR Policy did, as plaintiff suggests, change significantly between the time she signed it on September 10, 2007, and the creation of the documents proffered by defendants at Dkt. Nos. 17-3 and/or 28-2, questions of fact remain as to whether she received notice of such change in policy.  Cf. Lockette v. Morgan Stanley, No. 18-CV-876 (JGK), 2018 WL 4778920, at *4 (S.D.N.Y. Oct. 3, 2018) ("An employee may consent to a modification to the terms of employment by continuing to work after receiving notice of the modification." (quoting Manigault v. Macy's E., LLC, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order)).

Thus, although the record establishes that plaintiff signed an ADR agreement in 2007, questions of fact exist as to whether the document proffered by defendants at Dkt. No. 28-2 is the document that corresponds to plaintiff's signature page.  In addition, questions of fact exist as to whether plaintiff received notice of the ADR agreement, as contained in Dkt. No. 17-3 and/or Dkt. No. 28-2 when she returned to work at the

Practice in 2015. Consequently, because plaintiff has proffered sufficient evidence to establish that genuine issues of fact exist as to whether and by what terms the parties entered into an agreement to arbitrate, it is recommended that defendants' motion be denied, and a trial be held pursuant to 9 U.S.C. § 4. See Rightnour v. Tiffany & Co., 239 F. Supp. 3d 744, 749-50 (S.D.N.Y. 2017) ("'A party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate the trial contemplated by 9 U.S.C. § 4.'" quoting Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1103 (2d Cir. 1987)). Based on the foregoing conclusion, the undersigned declines to reach the parties' remaining arguments at this time.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**RECOMMENDED**, that defendants' motion (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health

and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.

Dated: August 18, 2021
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge